IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| JANE DOE 1 AND JANE DOE 2 | § | |
| | § | |
| PLAINTIFFS, | § | |
| v. | § | |
| | § | |
| BEAUMONT INDEPENDENT SCHOOL | § | |
| DISTRICT AND BRANDON LOUIS | § | Civil Action No. 1:21-cv-00132-MJT |
| CHILLOW, | § | Civil Action No. 1:21-cv-00190-MJT |
| | § | |
| DEFENDANTS. | | |

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES

TO THE HONORABLE UNITED STATES DISTRICT JUDGE, MICHAEL TRUNCALE:

COMES NOW, PLAINTIFFS, JANE DOE 1 and JANE DOE 2, and file this Motion for Attorneys' Fees and Expenses against Beaumont Independent School District ("BISD") and in support, would show the Court as follows:

## I.
## INTRODUCTION

Plaintiffs file this Motion for Attorneys' Fees and related nontaxable expenses in accordance with FRCP 54(d)(2). Through this Motion, Plaintiffs attach evidence in support of the request for fees.  Plaintiffs are also filing an Opposed Motion to Enter Bill of Costs. In determining said motion, in the event the Court determines a disputed costs is not subject to taxation under 28 U.S.C. 1920, Plaintiffs would request that it be taxed in accordance with the authority discussed below.  *See* 1993 Notes of the Advisory Committee, Paragraph 7, and any orders of the Court.

On May 24, 2024, following one (1) day of jury selection and 9 days of evidence and closing arguments, the jury returned a verdict in favor of Doe 1 and Doe 2 on the Title IX Claim referred to as the Title IX Heightened Risk Claim, and awarded Plaintiffs money

1

damages. [CV-132, Doc. 286; CV 190 – Doc. 238] On May 20, 2025, the Court entered Final Judgment on the Verdict, plus attorney fees under 42 U.S.C. 1988, costs, prejudgment interest and post judgment interest. [CV-132, Doc. 308; CV-190, Doc. 256] Plaintiffs Doe 1 and Doe 2 now move the Court to award attorneys' fees and nontaxable expenses, pursuant to 42 U.S.C. §1988 and Fed. R. Civ. P. 54(d).

## II.
## <u>BACKGROUND</u>

These lawsuits were filed on March 30, 2021 (CV-132) and April 22, 2021 (CV-190), shortly after Defendant Brandon Chillow's criminal convictions in March 2021 for sexual misconduct toward Doe 1 and Doe 2, including Online Solicitation of a Minor [CV-132, Doc. 7-1], and Improper Relationship Between Educator/Student [CV-190, Doc. 8-1] Without limitation, Chillow's Educator Sexual Misconduct ("ESM") included raping Doe 2 in a classroom at Vincent Middle School [Plaintiffs' Trial Ex. 106, Bates No. PLAINTIFFS000156], and sexually groping Doe 1 on campus with an erection. [Trial Transcript, Vol. 6, Pg. 103, Ln. 6 – 15] Plaintiffs' lawsuits alleged, (1) violation of Title IX of the Education Amendments of 1972 ("Title IX Claims"), **and** (2) violation of their Constitutional rights of bodily integrity guaranteed by the Fourteenth Amendment ("§1983 Claims"). The overlap in facts, causes of action, and legal issues lead to the cases being consolidated for discovery and trial. [CV-132, Doc. 219, Pgs. 5-6]

The eventual outcome of Plaintiffs' efforts and commitment to this case lead to the jury finding BISD liable for Plaintiffs' Title IX Heightened Risk Claims, as follows:

**QUESTION NO. 2—Title IX Claim No. 2**

Have Plaintiffs proven by a preponderance of the evidence each of the following:

(1) BISD's Board of Trustees maintained a policy or custom of deliberate indifference to reports of sexual harassment or an obvious risk of sexual harassment;

(2) BISD's policy or custom created a heightened risk of sexual harassment that was actually known by BISD's policymaking authority—the BISD Board of Trustees; and

(3) The heightened risk of sexual harassment existed in a context that was subject to substantial control by BISD's Board of Trustees.

Answer "Yes" or "No."

Answer (⬛⬛⬛⬛): YES

Answer (⬛⬛⬛⬛): YES

The Court entered Judgment on the verdict awarding Plaintiffs money damages, attorney fees, costs, and interest, as follows:

Doe 1 recover judgment on the Title IX Heightened Risk Claim for nominal damages in the amount of $750,000, plus attorney fees under 42 U.S.C. 1988 and other costs, plus prejudgment interest in the amount of $124,812.74 [CV-132, Doc. 308; CV-190, Doc. 256]; and

Doe 2 recover judgment on the Title IX Heightened Risk Claim for compensatory damages in the amount of $2,700,000, plus attorney fees under 42 U.S.C. 1988 and other costs, plus prejudgment interest in the amount of $442,486.356. [CV-132, Doc. 308; CV-190, Doc. 256]

From a procedural standpoint, Defendant did not file a Rule 50(a) Motion prior to the case being submitted to the jury. As such, BISD waived its right to challenge the legal sufficiency of the evidence supporting the verdict and judgment, and forfeited its right to seek judgment as a matter of law. *See Chamberlain Grp. LLC v. Overhead Door Corp.,* 2023 LEXIS 59267 at *4-5 (E.D. Tex. April 4, 2023) (J. Gilstrap) ("Generally, a party who fails to present a Rule 50(a) motion on an issue prior to the close of evidence waives both its right to present a Rule 50(b) motion after judgment and its right to challenge the sufficiency of the evidence on appeal.")

Plaintiffs now file this Motion for Attorneys' Fees and Expenses and incorporate into this Motion all Exhibits attached hereto.

### III.
### ARGUMENT & AUTHORITIES

Pursuant to 42 U.S.C. § 1988, prevailing parties are eligible to recover attorney fees at the discretion of the court. *Venegas v. Mitchell,* 495 U.S. 82, 87 (1990) Fees awarded under §1988 belong to the party, not the lawyer, separate from any fee contract between the party and the lawyer. *Id.,* at 87; *Swann v. City of Dallas,* 172 F.R.D. 211 (N.D. Tex. 1997):

> The party, not the attorney, is the proper recipient of such an award.… The party's payment obligations to her attorney, however, is determined by their contract, not by the amount of the court-ordered fee award.

*Id.,* at 213-14 *citing Evans v. Jeff D.,* 475 U.S. 717 (1988); *Venegas,* 495 U.S. at 87-88. The purpose of §1988 "was to ensure effective access to the judicial process for persons with civil rights grievances" by creating an incentive for attorneys to take these cases. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

### A. Plaintiffs Doe 1 and Doe 2 Are Prevailing Parties

A party may attain prevailing party status by succeeding on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit. *Veasey v. Abbott,* 13 4th 362, 368 (5th Cir. 2021). The "prevailing party inquiry does not turn on the magnitude of the relief obtained" *and* the discretion afforded district courts to deny prevailing plaintiffs under §1988 is "exceedingly narrow." *Sanchez v. City of Austin*, 774 F.3d 873, 878 (5th Cir. 2014) (reversing the district court's denial of attorneys' fees). Just recently on March 28, 2025, in the Title IX Heightened Risk case of *Lozano v. Baylor Univ., et al,* Judge Pittman issued a reasoned opinion analyzing the issue of "prevailing party" status, concluding that the Plaintiff Dolores Lozano qualified as a prevailing party, even

4

though the jury awarded <u>no</u> damages. *See Exhibit 1 – [C.A. No. 6:16-CV-403, Doc. 376, Order]* In this case, in addition to recovering damages, Doe 1 and Doe 2 succeeded in exposing BISD's policy or custom of deliberate indifference to reports of sexual harassment and were also awarded, prejudgment interest, attorney fees, costs and post-judgment interest. As such, both Doe 1 and Doe 2 are prevailing parties entitled to fees and nontaxable expenses under §1988.

### B.  Plaintiffs' Fees Should Not Be Reduced for Unsuccessful Claims

Because Plaintiffs did not prevail on the §1983 Claims or other Title IX Claim, Plaintiffs emphasize the precedent holding that attorney fees incurred on both successful and unsuccessful claims are recoverable when the claims involve a "common core of facts" or "are based on the same legal theories," both of which are present here. *See Coleman v. Houston Indep. Sch. Dist.,* 202 F. 3d 264 (5th Cir. 1999) [reported at 1999 LEXIS 39104]

> When the successful and unsuccessful claims involve a "common core of facts" or are based upon the same legal theories," then attorney fees incurred in the presentation of unsuccessful claims are recoverable on the theory that they contributed to the plaintiff's ultimate success.

*Id.,* at 1999 LEXIS 32293 at *14 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983) *followed Franciscan All., Inc. v. Becerra,* 681 F. Supp.3d 631, 641 (N.D. Tex. 2023); ("Furthermore, where time spent on different claims is difficult to segregate, the Fifth Circuit has held that "no reduction of fees is required.") *Id.* citing *Abell v. Potomac Ins. Co. of Ill.,* 946 F. 2d 1160, 1169 (5th Cir. 1991); *see also Riverside,* 477 U.S. at 569 (A lawsuit involving a common core of facts or related legal theories cannot be viewed as separate discrete claims, and the assessment of fees should focus on the significance of the overall relief.)

Here the Title IX Claim Plaintiffs prevailed on and the unsuccessful "§1983 Claims" both involve the same common core of facts, including (i) ESM occurring in the District for many years, (ii) Defendant Chillow's history of ESM, (iii) the Board's awareness of ESM; and (iv) the Board's policy or custom of deliberate indifference to the prior ESM and ongoing risk of ESM. Even the Court's Order consolidating the cases for trial recognized that "both cases stem from the same fact scenario and, thus involve common questions of fact" [CV-132, Doc. 219, Pg. 5] In addition to commonality in the facts and evidence, the Title IX Claim No. 2 and §1983 Claims involve common legal elements – i.e. a "policy or custom" of "deliberate indifference," by the Board of Trustees. [CV-132, Doc. 285 Pgs. 5 – 9; CV-132, Doc. 286, Questions 2 – 4] Additionally, the other Title IX claim Plaintiffs did not prevail on -- the Title IX Claim No. 1 – involves the same common core of facts surrounding Defendant Chillow's history of ESM at Paul Brown, which is the effect of the Board's indifference to the need for stronger policies to prevent ESM. Likewise, both the Title IX Claims involved Plaintiffs showing knowledge and deliberate indifference of ESM.

### C. Plaintiffs' Requested Attorneys' Fees Are Reasonable

The Court is "an expert on reasonableness of fees and may use its own experience in deciding a fee award." *Tech Pharm. Servs., LLC v. Alix Rx LLC,* 298 F. Supp. 3d 892, 904 (E.D. Tex. 2017) (J. Mazzant)  The Supreme Court has observed that a "reasonable" fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case.  *Perdue v. Kenny A.,* 559 U.S. 542, 552 (2010)

Courts in the Fifth Circuit apply a two-step analysis to determine a reasonable fee award. *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 391 (5th Cir. 2016). First, the court must "calculate the lodestar, 'which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work.'" *Id.* at 392

6

(quoting *Jimenez v. Wood Cty.*, 621 F.3d 372, 379 (5th Cir. 2010)). The lodestar amount is presumed to be reasonable. *Perdue,* 559 U.S. at 553–54. Next, "the court may enhance or decrease" the lodestar amount based on the twelve factors provided in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). *Combs*, 829 F.3d at 392.

### 1. The Lodestar is Presumed Reasonable

Plaintiffs request that they be awarded fees for the work performed by two attorneys and one paralegal. In support of this Application, Plaintiffs attach and incorporate in this Motion the Affidavit of Mark W. Frasher and Declaration of John G. Werner, setting forth their respective education, experience, and qualifications. *See Exhibit 2 – Affidavit of Mark W. Frasher and Exhibit 3 – Declaration of John G. Werner.* Additionally, the Affidavit of Mark W. Frasher sets forth the experience and qualifications of paralegal, Andrea Boever. *See Exhibit 2.* The proposed hourly rates, time, and associated lodestar calculation for two attorneys and one paralegal is $1,275,070, as follows:

| RATES | INITIALS | RATE | TIME SPENT | COST |
|---|---|---|---|---|
| John Werner *(Attorney)* | JW | $ 650.00 | 470.1 | $ 305,490.00 |
| Mark W. Frasher *(Attorney)* | MF | $ 600.00 | 1562.6 | $ 936,790.00 |
| Andie Boever *(Paralegal)* | AB | $ 150.00 | 218.6 | $ 32,790.00 |
| | | TOTAL: | 2251.3 | $1,275,070.00 |

### (a) <u>Reasonable Hours Necessary to Obtain Results Achieved</u>

In support of the reasonable hours expended in obtaining the judgment, Plaintiffs refer to the Affidavit of Mark W. Frasher, which includes a log identifying work performed and the estimated reasonable and necessary time incurred completing the work, as well as a discussion fact supporting an enhancement of 1.5 to 2.0 under the *Johnson* factors. *Exhibit 2 – Affidavit of Mark W. Frasher with Attachment 2.* The attached time log is based on the

personal knowledge of Plaintiffs' counsel. *See Exhibit 2 and Exhibit 3.* In referring to the time log, Plaintiffs note that contemporaneous billing records are not required to recover attorney fees, and the award of fees may be based on evidence other than contemporaneous billing records, such as affidavits and reconstructed records. *Walker v. Beaumont Indep. Sch. Dist.,* No. 1:15-CV-379 2020 LEXIS 248037 at *21-22 (E.D. Tex. Nov. 30, 2020) (Mag. Judge Giblin); *See Clearman v. Kochanowski,* 2022 LEXIS 16557 at *6 (5th Cir. 2022) (contemporaneous billing records are not required, and allowing submission of reconstructed records of time) In preparing the attached time log, counsel exercised billing judgment, acting in good faith to exclude what may be considered clerical, excessive, or redundant time. *See Exhibit 2 and Exhibit 3.* Additionally, although other support staff has worked on this matter over the years, the only paralegal time being submitted in this Application is the time of Andrea Boever. *See Exhibit 2.* Finally, other attorneys in the firm have participated in what would ordinarily be considered as billable work such as strategizing; however, the time has not been included in this Application in furtherance of billing judgment. *See Exhibit 2.*

## (b) Requested Rates are Reasonable in the Eastern District of Texas

The reasonable hourly rate is the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation, within the district where the court sits. *Denman v. Jackson Nat'l Life Ins. Co.,* 2021 LEXIS 159103 at *6 (E.D. Tex. June 4, 2021) (J. Mazzant) Plaintiffs seek a prevailing rate of $600.00 per hour for the work of Mark W. Frasher, and $650.00 per hour for the work of John G. Werner. The difference in rates reflects Mr. Werner's greater years of experience and greater number of trial verdicts, together with Board Certifications in Appellate Law and Personal Injury Trial Law. *See Exhibit 3 – Declaration of John Werner.* The requested rates are in line with the rates identified in the 2023 Survey conducted by the Texas Employment Lawyers

Association ("TELA") for attorneys practicing in the Eastern District of Texas with similar years of experience as Plaintiffs' counsel, which includes attorneys practicing since the 1990's. *See Exhibit 2, Attachment 1 – TELA Survey, Pg. 7.* Specifically, as of 2023, the average hourly rate for attorneys practicing since the 1990's was $595.78. *See Exhibit 2 - Attachment 1, Pg. 10.* To account for hourly rate increases associated with inflation, the TELA Survey determined that the average rate of inflation between 1990 and 2022 was 3.76% per year. *See Exhibit 2, Attachment 1 – TELA Survey, Pg. 5.* Applying the 3.76% rate for the last two years (when, as has been emphasized in news reports and political campaigns, the general inflation rate has been significantly higher) brings the 2025 average hourly rate to $641.52 ($595.78 x .0376=$22.40 + $595.78 = $618.28 x .0376 = 23.24 + $618.28 = $641.52).

Consistent with the TELA Survey, between 2017 and 2022, decisions from Eastern District Courts confirm that hourly rates of $600.00 and $650.00 are within the range of reasonable. *See Tech Pharm. Servs., LLC v. Alix Rx LLC,* 298 F. Supp. 3d 892, 904 (E.D. Tex. 2017) (J. Mazzant) (finding a range of $450.00 to $860.00 per hour to be reasonable rates); *Espinosa v. Prime Choice Urgent Care, PLLC,* 2022 LEXIS 187458 at *6-7 (E.D. Tex. Oct. 13 2022) (J. Jordan) (billing rate of $600.00/hour was reasonable in FLSA case); *Cunningham v. Kitchen Collection, LLC,* 2019 LEXIS 111212 at *11 (E.D. Tex. July 3, 2019) (J. Mazzant) (finding a rate of up to $600.00 a reasonable rate to charge for attorneys); *See also Roberts v. Baptist Healthcare Sys., LLC,* No. 1:20-CV-00092, 2023 LEXIS 126913 at *10 (E.D. Tex. June 29, 2023) (Mag. J. Stetson) (noting that rates of $600.00 per hour were supported by Eastern District precedent.) In considering hourly rates, Plaintiffs emphasize Supreme Court precedent holding that **attorney fees in civil rights cases should be**

commensurate with "other types of equally complex Federal litigation." *Riverside v. Rivera*,
477 U.S. 561, 574-75 (1986); *Davis v. Perry*, 991 F. Supp.2dd 809, 847 (W.D. Tex. 2014)
(emphasis added) In support of the hourly rates, Plaintiffs attach the Declaration of Timothy
Garrigan, who has practiced civil rights law in the Eastern District for over 35 years, and
who verifies that the requested hourly rates are at the "lower" end of current prevailing
rates for complex federal litigation in the Eastern District. *Exhibit 4 – Garrigan Affidavit.*

With regard to the billing rate for paralegal time of Andrea Boever, who has been a
paralegal since 1990. *See Exhibit 2.* Plaintiffs request a rate of $150.00/hour, which is also
in line with rates found reasonable in the Eastern District of Texas. *Espinosa v. Prime
Choice Urgent Care, PLLC,* 2022 LEXIS 187458 at *6-7 (E.D. Tex. Oct. 13 2022) (J. Jordan)
(paralegal rate of $150.00/hour was reasonable in an FLSA case); *Roberts v. Baptist
Healthcare Sys., LLC,* No. 1:20-CV-00092, 2023 LEXIS 126913 at *10 (E.D. Tex. June 29,
2023) (Mag. J. Stetson) (rate of $150.00 is supported by Eastern District precedent)

### D. Plaintiffs Request a Multiplier of 1.5 to 2.0 Based on the Societal and Precedential Importance to the Interest of Title IX Enforcement and Protection of Students from Educator Sexual Misconduct

From a broader perspective, the customary fee in civil rights and other socially
valuable cases is often higher than in other cases. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269,
328 (W.D. Tex. 2007). "While many categories of lawsuits are valued by our society, actions
resulting in the erosion of discrimination and the preservation of civil rights are especially
significant." *Id.* In fact:

[o]ne of the most significant considerations taken into account in setting the
ultimate fee is the benefit conferred by the litigation. Benefit in this context is not
necessarily limited to monetary relief or the value of the property right
protected….The objective of the award is to create a financial incentive to initiate
socially desirable litigation and thereby enhance access to the adjudicative process,
taking into account the amount of the benefit actually produced and allowing fees to

be enhanced accordingly seems particularly appropriate.

Wright & Miller, Federal Practice & Procedure, §1803.1. In *Riverside v. Rivera,* the Court

reiterated the public importance of lawsuits enforcing the statutes enumerated in §1988,

which includes Title IX, as follows:

> Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms. See *Carey v. Piphus, 435 U.S. 247, 266 (1978)*. And, Congress has determined that "the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in *§ 1988*, over and above the value of a civil rights remedy to a particular plaintiff. . . ." *Hensley, 461 U.S., at 444, n. 4* (BRENNAN, J., concurring in part and dissenting in part).
>
> …..Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief. Rather, Congress made clear that it **"intended that the amount of fees awarded under *[§ 1988]* be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and *not be reduced because the rights involved may be nonpecuniary in nature.*"** Senate Report, at 6 (emphasis added). "[Counsel]

*Riverside,* 477 U.S. 561 at 574-75 (emphasis added)*; Swanston v. City of Plano,* No. 4:19-

CV-412, 2022 LEXIS 148233 at *20 (E.D. Tex. Aug. 18, 2022) *revd. on other grounds,* 86

F.4th 1108 (5th Cir. 2023) Following the above precedent*,* the verdict in this case is of

exceptional societal importance to public school students at the local, state and national

level. Specifically, the verdict emphasizes the importance for public school leaders to

ALWAYS stay vigilant to be "aware of" and "respond to" reports of ESM in compliance with

Title IX, so as to protect school children from the risk of ESM, …. versus maintaining a

custom of indifference (head in the sand) to reports of ESM, as the jury found in this case.

In specific regards to the local school district (BISD), the testimony in deposition and trial

of Board Trustee Woodrow Reece spotlights the history of deliberate indifference by BISD's

Board to publicized report of ESM of school children, and the Board's obligation to insure

compliance with Title IX's obligations to properly respond and protect students from ESM. Woodrow Reece's testimony emphasized the Board's awareness of the "current" need for stronger policies to prevent ESM, and to never repeat the history of indifference to ESM found by the jury. *See Testimony of Woodrow Reece.* [Doc. 247, Vol. 7, Pg. 81, L. 9 – Pg. 84, L. 14; Pg. 85, L. 19 – Pg. 86, L. 4] In sum, the larger societal value of this case is to encourage public schools around the state and country to comply with Title IX in responding to and preventing the risk of ESM, and to rebuke any purported indifference to reports of ESM.

Proof of the societal and precedential value of the verdict is demonstrated by a recent Harvard Law Review publication. In March 2025, the Harvard Law Review published a Note addressing the adverse effect the Supreme Court's opinion in *Cummings v. Premier Rehab Keller, P.L.L.C.,* has had on the rights of antidiscrimination plaintiffs to win their lawsuits and recover monetary damages.[1] *See Exhibit 5 – Harvard Law Review Note.* Surveying Title IX verdicts post-*Cummings*, the Harvard publication found that the verdict in this case exceeded other Title IX verdicts post-*Cummings*. Specifically, the Review found that three of the four post-*Cummings* awards were either "significantly lower or rely on other causes of action to bring in emotional distress damages," while the verdict in this case stood out from the rest. *See* 138 *Harv. L. Rev.,* 1407, 1423-25, discussing the verdict and award of damages in this case. The Harvard Law Review not only shows the exceptional importance and nature of the verdict in this case, but also supports enhancement under multiple *Johnson* factors – *i.e.* "the amount awarded and results obtained," "undesirability of the case – from the standpoint of being the only significant verdict post-*Cummings*," "novelty and difficulty of the

---

[1] Harvard Law Review. *Note: Without Remedies: The Destructive Effect of Cummings and the Contract Law Analogy on Antidiscrimination Spending Clause Plaintiffs,* 138 Harv. L. Rev., 1407, 1424-1425 n. 134, 152, 154 (March 2025)

legal issues." Specifically, the Harvard Law Review shows the negative impact the Supreme Court's 2022 opinion in *Cummings v. Premier* has had on victim's rights to obtain damages in Title IX sexual abuse cases, and the difficulty of recovering damages. *See Exhibit 5 – Pgs.* 1423-1425. Additionally, the publication demonstrates the amount of damages awarded in this case is significantly more than other Post-*Cummings* Title IX verdicts identified, thereby supporting an enhancement of the lodestar under *Johnson*. *See Exhibit 5.*

In addition to the successful verdict, the procurement of evidence and legal briefing lead to the Court's published opinions denying BISD's Motion to Dismiss[2] and denying, in part, BISD's Motion for Summary Judgment,[3] which are both cited in the areas of Title IX and §1983 law, further showing the societal and precedential importance of this case:

### Cases

1. *J.T. v. Uplift Educ.,* 679 F. Supp.3d 540, 555 (N.D. Tex. 2023) **(a school district may act with deliberate indifference where it does nothing in response to teacher-on-student sexual abuse.)** *citing* 615 F. Supp. 3d 471.

2. *S.J. v. Perryton Indep. Sch. Dist.,* 2024 LEXIS 215941 at *15 (N.D. Tex. Nov. 2, 2024) **(alleging the school district as the "policymaker" is sufficient under** *Monell***)** *citing* 615 F. Supp. 3d 471, 496.

3. *Derouen v. Aransas Cnty. Det. Ctr.,* 2024 LEXIS 180530 at *37 (S.D. Tex., Aug. 30, 2024) **(a violation of bodily integrity flows from behavior of the governmental officer that is so egregious, … that it may fairly be said to shock the contemporary conscience)** *citing* 727 F. Supp. 3d 589, 623.

### Law Reviews

4. Harvard Law Review. *(See above)*

5. Harvard Law Review. *Symposium: Common Good Constitutionalism; Originalism, Common Good Constitutionalism, and Transparency,* 46 Harv. J.L. & Pub. Pol'y 1217, 1235 n. 69 (2023) ("… **child abuse harms the social fabric** …") *Doe,* 615 F. Supp. 3d at 495.

---

[2] *Doe v. Beaumont Indep. Sch. Dist.,* 615 F. Supp.3d 471 (E.D. Tex. 2022)
[3] *Doe v. Beaumont Indep. Sch. Dist.,* 727 F. Supp.3d 589 (E.D. Tex. 2024)

6.  <u>Minnesota Law Review</u>. *Note: Sidesteppig the Escherian Stairwell: Explicit Establishment as a Method for Circumventing Qualified Immunity's Constitutional Stagnation,* 108 Minn. L. Rev. 1059, 1098 n. 215 (2023)

7.  <u>Minnesota Law Review</u>. *Article: Civil Rights Liability for Bad Hiring,* 108 Minn. L. Rev. 1, 35 n. 187 (Nov. 2023)

### E.  <u>The *Johnson* Factors Support an Upward Multiplier of 1.5-2 times the Lodestar</u>

Once the lodestar is set, the Court can adjust it based on the factors set forth in *Johnson,* 488 F.2d at 717-19. Here, Plaintiffs are requesting an enhancement of 1.5 to 2 times the lodestar. In applying the *Johnson* factors, "the trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities." *Johnson*, 488 F.2d at 717.[4] In support of an upward multiplier, Plaintiffs incorporate the Exhibits attached hereto for all purposes.

### 1.  <u>The Time and Labor Required by the Litigation and Skill Required to Perform the Legal Services Properly Support an Upward Multiplier</u>

The time and labor in this case was significant, some of which is outlined in Exhibit 2. For starters, given Plaintiffs' claims for a "policy and/or custom of deliberate indifference," the relevant timeframe for discovery and trial was an approximate seventeen (17) year period between, (i) 2002 when the School Board reinstated Ferguson Parker in knowing disregard for a prior criminal indictment for sexual assault of a child, and (ii) June 2019 when Defendant Chillow was arrested for sexual crimes against Doe 1 and Doe 2. Counsels' investigation and discovery of evidence covered the entire seventeen (17) year period. *See Exhibit 2.* A total of

---

[4] Those factors are: (1) The time and labor required by the litigation; (2) the novelty and difficulty of the issues; (3)the skill required to perform the legal services properly; (4) the preclusion of other employment of the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the awards in similar cases. *Id.* at 717-719. Several of the twelve factors are particularly relevant to the Court's analysis here and support enhancement of the lodestar.

thirty-five (35) depositions were taken, and BISD produced over six thousand (6,000) pages of records covering the seventeen (17) year period. *See Exhibit 2.* In addition to depositions, Plaintiffs' counsel served multiple sets of written discovery on BISD covering the relevant timeframe, which was in addition to subpoenaing records from third parties, among which included local news outlets for stories covering instances of ESM occurring in the District during the relevant timeframe. Due to BISD's objections to written discovery, Plaintiffs were forced to file motions to compel seeking court orders compelling BISD to respond to written discovery, which motion practice necessarily involved responses, replies, sur-replies, supplements, and in one instance a three (3) hour discovery hearing before Magistrate Judge Hawthorn. [CV-132, Doc. 142] In addition to protracted discovery and motions to compel, the overall motion practice was substantial. *See Exhibit 2.* Both discovery and motion practice were continuing through April 2024, the month before trial.

Additionally, Plaintiffs' counsel consulted with multiple experts in Title IX, and eventually retained Dr. Charol Shakeshaft, a leading expert in the field of Title IX compliance and evaluation of policies to prevent ESM. *See Exhibit 2.* Counsel also consulted with expert forensic psychologists, and eventually retained Dr. John Vincent, to assess the past and future injuries suffered by Doe 1 and Doe 2. *See Exhibit 2.* Both Dr. Shakeshaft and Dr. Vincent testified at trial. Dr. Shakeshaft traveled from Virginia and was on the stand for approximately two (2) days during which she addressed BISD's custom of indifference to deficiencies with Title IX compliance and the known risk of ESM occurring in the district between 2002 and 2019 when Defendant Chillow sexually abused Doe 1 and Doe 2. Separately, Dr. Vincent traveled from Houston and testified as to the extreme injuries Doe 1 and Doe 2 suffered as a consequence of the ESM, and explained the physical, anatomical injury associated with ESM,

which is particularly important in the wake of *Cummings*. [TT, Vol. 6, Pg. 74, L. 13 – Pg. 75, L. 4; P. 128, L. 1 – P. 133, L. 1] When the Supreme Court issued *Cummings,* counsel sought leave to amend Plaintiffs' Complaints to add a claim for nominal damages, to insure that Plaintiffs were afforded every right to recover damages for the injustice they suffered. [CV-132, Doc. 198] Separately, it was Plaintiffs' Motion to Reconsider Summary Judgment that resulted in submission of the claim on which Plaintiffs prevailed. [CV-132, Doc. 220, 251]

As the Court is aware, the pretrial conference occurred over the course of four (4) days, jury selection lasted a full day, and the evidence and closing arguments were presented over the course of nine (9) days. *See Exhibit 2.* Before resting, Plaintiffs called twenty-two (22) witnesses live and two (2) by deposition, introduced fifty-three (53) trial exhibits, and cross-examined Defendant's witnesses. *See Exhibit 2.* This *Johnson* factor supports the requested multiplier.

### 2. The Novelty and Difficulty of the Issues and, The Skill Required to Perform the Legal Services Properly Support an Upward Multiplier

From a novelty standpoint, while the Title IX Heightened Risk Claim is a mix of elements from §1983 and Title IX, it remains a newer claim among district courts in the Fifth Circuit. *See Exhibit 1 and Exhibit 2.* As indicated by the recent opinion from Judge Pittman in *Lozano v. Baylor,* the Title IX Heightened Risk claim has not had significant treatment within the Fifth Circuit (*See Exhibit 1, Pgs. 10-11*), and the verdict in this case would seem to be among the few cases reaching a favorable verdict within the Fifth Circuit. The novelty of the Heightened Risk Claim in the context of "employee-on-student" sexual abuse cases was recently acknowledged in *Ayon v. Austin Indep. Sch. Dist.,* 2025 LEXIS 3922 at *11 (5th Cir. Feb. 20, 2025), wherein the Fifth Circuit Panel addressed an appeal from summary judgment and expressly noted that it was not necessary to consider

16

whether the Plaintiffs' Title IX Heightened Risk Claim was cognizable in cases involving "employee-to-student" sexual harassment, because the Court had already determined that the evidence was insufficient to establish a pattern of previous incidents to show a risk of harassment was obvious. *Id.,* at *8-11. Unlike *Ayon,* the jury in this case found the evidence sufficient to find BISD liable on the "policy and custom" Title IX Heightened Risk Claim. Assuming BISD files an appeal, this verdict may be the Fifth Circuit's first opportunity to address application of the Title IX Heightened Risk Claim in the context of a jury verdict based on employee-to-student sexual abuse.

Additionally, the novelty and difficulty associated with this verdict is supported by the fact the trial occurred post-*Cummings,* which resulted in jury instructions to exclude damages for mental anguish and emotional distress. *See Exhibit 2.* [CV-132, Doc. 285]

Additionally, the difficulty of the legal issues and evaluation of evidence is demonstrated by the parties' summary judgment filings and the Court's opinions ruling on BISD's Motion to Dismiss and Motion for Summary Judgment. *See Exhibit 2.* To address the complexity of the Title IX Claims, Plaintiffs' counsel retained Dr. Charol Shakeshaft and coordinated with Dr. Shakeshaft throughout the case in regards to Title IX compliance and BISD's policies and practices pertaining to Title IX and responses, or lack of response to ESM. In the context of Title IX compliance, the direct examination of Dr. Shakeshaft provided the jury with a thorough explanation of how BISD should have responded following the prior instances of ESM in the protection of school children from the risk of ESM. Dr. Shakeshaft's testimony equally highlighted BISD's policy and/or custom of being deliberately indifferent to reports of ESM, which is exactly what the jury found. Separately, with regard to injury and damages, Plaintiffs' counsel retained Dr. John Vincent, who conducted a forensic examination of both Doe 1 and Doe 2. Through direct

examination, Dr. Vincent described the past and future injuries Doe 1 and Doe 2 suffered as a result of the abuse, including the likelihood of physical and anatomical injury, which is of particular importance post-*Cummings*.

### 3. The amount involved, and results obtained Support an Upward Multiplier

As noted above, the recent publication from Harvard Law Review included a survey of post-*Cummings* Title IX verdicts, placing the verdict in this case as the highest verdict post-*Cummings. See Exhibit 5.* As such, the substantial damages awarded in this case weighs in favor of an upward multiplier based on (i) the results obtained, despite *Cummings* and *Cummings* related jury instructions; and (ii) the damages awarded in this case, compared to other post-*Cummings* verdicts, among which include *Lozano,* which was a verdict for no damages. Equally important is the message the verdict sends to public school systems to be proactive in responding to reports of ESM in compliance with Title IX and protect students from the known or suspected risk of ESM.  Lastly, in terms of results obtained, at no time did BISD ever offer any amount to settle this case.

### 4. The undesirability of the case Supports an Upward Multiplier

As a general matter, Courts have recognized the undesirability of civil rights litigation, among which include the uncertainty of recovery and Defendants which are well staffed with substantial financial resources. *See Swanston v. City of Plano,* No. 4:19-CV-412, 2022 LEXIS 148233 at *21 (E.D. Tex. Aug. 18, 2022) *revd. on other grounds,* 86 F.4th 1108 (5th Cir. 2023)  In *Swanston,* the Court noted the uncertainty of recovery associated with a contingent fee agreement in the context of undesirability. *Id.*

From the standpoint of undesirability, unlike representing a student who was sexually abused in a private sector setting – i.e. private school, summer camp, or little league program – representing public school children who are sexually abused by their

teacher is significantly more difficult, legally and factually. In the private sector setting, Plaintiffs are permitted to rely on state court torts, including negligence theories, in establishing liability – *e.g.* respondeat superior negligence, negligent hiring, negligent supervision, negligence per se, and gross negligence – to establish liability for damages. Additionally, Plaintiffs are entitled to submit damages not otherwise permitted in a Title IX case – including mental anguish, emotional distress, and punitive damages. On the flip side, children like Doe 1 and Doe 2 who are victimized in the public-school setting are not able to pursue claims for negligence, irrespective of the fact that the school district was clearly negligent, or even grossly negligent. Instead, public school plaintiffs must produce evidence to support elements such as "a policy or custom" of "deliberate indifference" on the part of the "school board." In this case, absent the requisite evidence on any of the stated elements leads to a summary judgment against Plaintiffs. By comparison, summary judgments in negligence cases are rare. In sum, the legal hurdles to liability and damages make these types of cases less desirable.

Additionally, from the standpoint of counsel's investing time and resources into obtaining proof to overcome summary judgment and obtain a favorable verdict, proving a policy or custom of deliberate indifference, required substantial work and discovery to obtain proof concerning prior instances of ESM over a wide period of time, together with the Board's knowledge and deliberate indifference to same. Additionally, Plaintiffs' counsel needed to present evidence to explain the role and application of Title IX in the public-school setting, as well as the physical aspect of Plaintiffs' injuries, each of which involved consulting with experts and eventual retention of two respected experts in their respective fields – Dr. Shakeshaft and Dr. Vincent. Engaging in said discovery and expert consultation necessarily involved an expenditure of costs and expenses associated with

depositions, written discovery and expert work. *See Exhibit 2.* As of this filing, Plaintiffs'

counsel has advanced costs and expenses in excess of $170,000, without any assurance of

repayment. All of these circumstances support the undesirability factor in support of

enhancement of the lodestar. *See Swanston v. City of Plano,* No. 4:19-CV-412, 2022 LEXIS

148233 at *20 (E.D. Tex. Aug. 18, 2022) *revd. on other grounds,* 86 F.4th 1108 (5th Cir. 2023)

Additional undesirability arises from the potential risk of public stigma to Plaintiffs

and Plaintiffs' counsel for suing the local district seeking to hold a publicly elected School

Board accountable for maintaining a policy or custom of "deliberate indifference" to reports

of sexual harassment. *See Exhibit 2. See Menard v. Targa Res., LLC,* 2023 LEXIS 155214

at *22 (M.D. La. Aug. 31, 2023) ( "undesirability" factor to encourage and compensate civil

rights attorneys facing social and economic backlash for their professional efforts to

eradicate discrimination.); *Martinez v. Refinery Terminal Fire Co.,* 2016 LEXIS 11940 at

*29 (S.D. Tex. Sept. 2, 2016) ("…civil rights attorneys face hardships in their communities

because of their desire to help civil rights litigants and disapproval by the community can

result in economic hardship.") A fear of stigma can likewise result in a witness being

apprehensive about testifying against the school district, particularly if the witness is a

former employee or student with knowledge of reports of ESM going unaddressed. In this

case, the Court issued arrest warrants for two witnesses – (1) Danny Reed, who informed

the Principal at Vincent Middle School about female students being uncomfortable around

Defendant Chillow; and (2) Vanessa Mayfield, a former student of Paul Brown who had

reported Defendant Chillow's ESM to the school counselor. [CV-132, Doc. 263, 264] While

both witnesses eventually appeared without the need for arrests, their behavior could be

viewed as showing some level of concern. Lastly, because the school district is operated on

tax dollars, there is a legitimate concern that a jury would have reservations about

awarding money damages for fear it may increase property taxes, which was actually a matter for the Motion in Limine. [CV-132, Doc. 215, Limine #53] Thus, the above factor weighs in favor of an upward multiplier of the lodestar.

### 5. Fee Awards in Other Cases Support an Upward Multiplier

Comparing fee awards in other cases supports the requested enhancement. For example, in *Lozano,* the Plaintiff recovered zero damages, but was awarded §1988 fees in the amount of $437,917.50. *See Exhibit 1.* Over fifteen (15) years ago in the discrimination lawsuit of *Lewallen v. City of Beaumont*, the Court awarded the Plaintiff $428,421.75 in attorney fees and $15,873.11 in costs and litigation expenses on a verdict that awarded the Plaintiff $75,000 in past and future compensable damages. *See Lewallen v. City of Beaumont*, No. 1:05-CV-733, 2009 LEXIS 62503 (E.D. Tex. July 20, 2009) (J. Heartfield), *aff'd in part,* 394 Fed. Appx. 38 (5th Cir. 2010) (affirmed district court's award of costs and fees but reversed on other grounds) The fees awarded in *Lewallen* represented approximately 5.7 times the verdict. On appeal, the Fifth Circuit affirmed Judge Heartfield's findings as to the attorney fee award recognizing that Plaintiffs' counsel's representation required an ordinate volume of specialized legal work, due to having to prove a policy or custom and the causal connection to the action taken against the Plaintiff. *Id.,* at 46-47. Using that same multiplier in this case, 5.7 times the verdict for Doe 1 would be $4,275,000, and for Doe 2 would be $15,390,000, both of which are greater than the requested enhancement in this case. The *Lewallen* Court cited the Supreme Court's decision in *Riverside v. Rivera*, affirming an award of $245,456.25 where the Plaintiff received $33,350. *Id.* The attorney fee award in *Rivera* was 7.3 times greater than the damages awarded. Multiplying 7.3 times the award to Doe 1 would be $5,475,000, and for Doe 2 would be $20,250,000.

21

6. <u>The Nature and Length of the Professional Relationship with the Client Supports an Upward Multiplier</u>

Plaintiffs' counsel has served as Doe 1 and Doe 2's attorney since prior to Defendant Chillow's criminal conviction in March 2021. Plaintiffs' counsel has maintained a close professional relationship with Doe 1 and Doe 2 and their parents throughout the litigation, as reflected by the commitment of the families to remain in the courtroom during the entirety of the trial. Because of the sensitive subject matter of this case and emotional trauma of going through a trial, the nature of the relationship between counsel and client has included attempting to protect Doe 1 and Doe 2 from the emotional trauma associated with re-living the abuse. The nature of the relationship is illustrated by counsel's Motion for Protection to protect Doe 1 and Doe 2 and their parents from having to be deposed. [CV-132, Doc. 34, 65; CV-190, Doc. 33, 56] The Court granted in part and denied in part Plaintiffs' Motions, allowing the depositions to go forward, but placed certain conditions on the depositions, including that they be conducted in the courtroom with time limitations. [CV-132, Doc. 68; CV-190, Doc. 76] The Court also granted a motion to have a service dog, Taffee, present for the Minor Plaintiffs' depositions. [CV-132, Doc. 83 – Motion; Doc. 85-Order]

7. <u>The Experience, Reputation, and Ability of the Attorney Supports a Multiplier</u>

As explained in Exhibits 2 and 3, Plaintiffs' counsel Mark W. Frasher and John G. Werner have extensive experience representing Plaintiffs in cases involving violations of federal, fee shifting statutes and complex civil litigation. Plaintiffs' counsel, John G. Werner, has significant experience handling complex cases in federal and state court and has tried complex civil cases, post-COVID. *See Exhibit 3.* Mr. Werner was second chair counsel and lead appellate counsel in *Signature Industrial v. International Paper*, 638 S.W.3, 179 (Tex.

2022) (eight figure verdict, remitted on appeal) Plaintiffs' counsel expended significant time and funds engaging in discovery and expert consultation to address both liability and damages, overcome dismissal, summary judgment and obtaining, what appears to be one of the highest Title IX verdicts, if not the highest, post *Cummings*.

### 8. Remaining *Johnson* Factors are Neutral

The remaining *Johnson* factors, including, (1) preclusion of other employment of the attorney; (2) the customary fee; and (3) the time limitations imposed by the client or the circumstances do not impact the lodestar.

### F. Attorney Fees on Appeal

In addition to recovery of attorney fees for legal work at the trial court level, Plaintiffs request the Court's judgment order that Defendant conditionally pay Plaintiffs' attorney fees for unsuccessful appeals of the judgment, as follows:

- $125,000 in the event Defendant makes an unsuccessful appeal to the Fifth Circuit; and

- $127,500 in the event Defendant makes an unsuccessful appeal to the United States Supreme Court.

In support of this request for appellate attorney fees, Plaintiffs cite Exhibits 2 and 3 setting the anticipated hours for counsel to address any such appeals. *See Exhibits 2 and 3.*

### G. Request for Nontaxable Costs

Separate from 28 U.S.C. 1920, Plaintiffs may recover all reasonable out of pocket expenses which are ordinarily charged to a client, pursuant to 42 U.S.C. 1988 and FRCP 54 (2)(d) *See Lewallen v. City of Beaumont,* 2009 LEXIS 62503 at *43-45 (E.D. Tex. July 20, 2009) (J. Heartfield):

[T]he Fifth Circuit has long held that "[a]ll reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone are

23

plainly recoverable in §1988 fee awards because they are part of the costs normally charged to a fee-paying client."

*Id.,* at 43-44, *citing Associated Builders & Contractors, Inc. v. Orleans Parish Sch. Bd.,* 919 F.2d 374 at 380 (5th Cir. 1990) ("All reasonable out-of-pocket expenses, … are plainly recoverable in §1988 fee awards because they are part of the costs normally charged to a fee-paying client.") The question of whether the expenses awarded are reasonable is committed to the sound discretion of the trial judge. *Id.; Lewallen,* 2009 LEXIS at *45 (courts in the Fifth circuit continue to adhere to the principle that costs normally charged to a fee-paying client may be recovered as part of an attorney's fee award.) (collecting cases) In *Lewallen,* Judge Heartfield found the following out-of-pocket expenses were properly recoverable, as the costs would ordinarily be charged to the client:

1. Travel costs, including mileage, meals, parking, and accommodations, *Id.,* at *4;
2. Electronic Research on Lexis Nexis, *Id.;*
3. Private Process Servers, *Id.;*
4. Photocopy Costs, *Id.;*
5. Postage and Long Distance, *Id.; and*
6. Pacer Charges. *Id.*

Additionally, Courts have permitted recovery of fees for exemplification and the costs of making copies of materials which were necessarily obtained for use in the case.

*Members Only Dental, P.A. v. State Farm Lloyds,* 2022 LEXIS 118808 at *13-14 (E.D. Tex. July 6, 2022) (J. Mazzant):

[T]he Fifth Circuit has indicated that "[the losing party] should be taxed for the cost of . . . exhibits for use in the case." *Allstate Ins. Co. v. Plambeck,* 66 F. Supp. 3d 782, 793 (N.D. Tex. 2014) (quoting *Fogleman,* 920 F.2d at 286). While the prevailing party must demonstrate a link between the costs incurred and the litigation, the prevailing party need not "identify every xerox copy made for use in the course of legal proceedings." *Fogleman,* 920 F.2d at 278.

*Id.,* at 14-15 (taxable costs include costs of the binders and tabs for the copies furnished to the Court) *Combs v. City of Huntington,* No. 9-12-CV-210, 2015 LEXIS 183561 at *3 (E.D. Tex. March 13, 2015) (J. Clark) (Copies of exhibits required by Court are taxable.)

Pursuant to the above authority, through this Motion, Plaintiffs are seeking recovery all expenses that are ordinarily charged to the client and necessary for use in the case, among which include the following:

1. Travel costs, including mileage, meals, parking, and accommodations, *Id.,* at *4;
2. Electronic Research on Lexis Nexis, *Id.;*
3. Private Process Servers, *Id.;*
4. Photocopy Costs, *Id.;*
5. Postage and Long Distance, *Id.; and*
6. Pacer Charges. *Id.*

*Exhibit 2.* Additionally, the charges of Dr. Shakeshaft and Dr. Vincent are likewise examples of costs that would be charged to the client. *Exhibit 2.*

Attached as Exhibit 6 is a spreadsheet setting forth expenses incurred by counsel which pertain to expert consultation of Dr. Shakeshaft and Dr. Vincent.  The expenses are the type that would ordinarily be charged to the client and are recoverable under the above precedent.  Plaintiffs request the Court tax said expenses against Defendant in accordance with the above authorities. *Exhibit 2.*  Additionally, Plaintiffs will file a supplemental request for costs that includes other costs Plaintiffs seek to tax against Defendant.

## CONCLUSION & PRAYER

For these reasons, Plaintiffs respectfully request the Court grant their Motion and award Attorney's Fees under §1988.

Respectfully submitted,

REAUD, MORGAN & QUINN, L.L.P.
801 Laurel Street
Post Office Box 26005
Beaumont, Texas 77720-6005
Telephone: (409) 838-1000
Telecopier: (409) 833-8236

By:   /s/ Mark W. Frasher
          Mark W. Frasher
          State Bar No. 00798187
          mfrasher@rmqlawfirm.com
          John G. Werner
          State Bar No. 00789720
          jwerner@rmqlawfirm.com
          **Attorneys for Plaintiffs**

## CERTIFICATE OF CONFERENCE

I certify that I conferred with Counsel for Defendants, Paul Lamp, regarding this Motion and Defense Counsel has indicated that Defendants are opposed.

/s/ Mark W. Frasher
Mark W. Frasher

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true copy of the above and foregoing document on all appropriate parties this 3rd day of June, 2025.

/s/Mark W. Frasher
Mark W. Frasher